1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CARLTON PRATT,

11            Plaintiff,                    No. CIV S-06-1369 GGH

12        vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,[1]

14

15            Defendant.                    ORDER
     _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's application for Supplemental Security Income

18   ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons that follow,

19   plaintiff's Motion for Summary Judgment or Remand is granted in part, the Commissioner's

20   Cross Motion for Summary Judgment is denied in part, and the Clerk is directed to enter

21   judgment for the plaintiff.  This case is remanded for further findings pursuant to sentence four of

22   42 U.S.C. § 405(g).

23   ////

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein. Pursuant to 42 U.S.C. §
     405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
26   action.

1

BACKGROUND

Plaintiff, born January 28, 1960, protectively filed an application for Supplemental Security Income payments on November 21, 2003.  (Tr. at 21.)  Plaintiff alleges disability beginning June 3, 2002, due to "loss of voice, unable to speak clearly."  (Tr. at 71, 81.) In a decision dated December 8, 2005, the administrative law judge ("ALJ") determined that the plaintiff was not disabled.[2]  The ALJ made the following findings:[3]

\\\\\

_____

[2] Two hearings were held in this case.  At the first, held on February 3, 2005, plaintiff appeared pro se.  (Tr. at 213.)  That hearing was postponed by the ALJ upon learning that plaintiff had retained counsel.  At the second hearing, held on October 19, 2005, plaintiff was represented by the attorney who represents him on this appeal. (Tr. at 219.)

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.   The claimant's speech disorder is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 416.920).

3.   This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.   The claimant retains the residual functional capacity for work at all exertional levels.  However, the claimant's ability to work is eroded because he can speak occasionally only.

6.   The claimant's past relevant work as automobile detailer did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 416.965).

7.   The claimant's medically determinable speech disorder does not prevent the claimant from performing his past relevant work.

8.   The claimant is was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)).

(Tr. at 16.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether plaintiff's work as an automobile detailer was ever performed at the substantial gainful activity level such that it can be appropriately considered "past relevant work"; B. Whether the ALJ's credibility finding was based on substantial evidence; and, C. Whether the ALJ failed to pose a complete hypothetical to the vocational expert.

\\\\\

\\\\\

1  LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is

3  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

5  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

6  Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

7  accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

8  1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

9  (1938)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

10  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

11  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

14  ANALYSIS

15          A. Past Relevant Work

16          Plaintiff alleges the ALJ's finding that plaintiff could return to his past relevant

17  work as an automobile detailer cannot be sustained because the record shows plaintiff's earnings

18  from that work never reached the amount presumed to be "substantial gainful activity."

19          Past relevant work is work that the claimant has done within the past 15 years,

20  that was substantial gainful activity, and that lasted long enough for the claimant to have learned

21  to do it.  20 C.F.R. §404.1560(b)(1).  "Substantial gainful activity is work done for pay or profit

22  that involves significant mental or physical activities.  Earnings can be a presumptive, but not

23  conclusive, sign of whether a job is substantial gainful activity."  Lewis v. Apfel, 236 F.3d 503,

24  515 (9th Cir. 2001) (internal citations omitted).

25          The regulations provide that monthly earnings of a certain fixed amount generally

26  show that a claimant was engaged in substantial gainful activity.  20 CFR § 416.974(b)(2).  That

4

1    amount was $740 in 2001, when it became indexed for inflation.  <u>See</u> Charles T. Hall, Social

2    Security Disability Practice § 2:25 (West, 2003 ed.); 20 CFR § 416.974(b)(2)(ii).  In 2002, the

3    amount was raised to $780 per month.  <u>See</u> Cost-of-Living Increase and Other Determinations

4    for 2003, 67 Fed. Reg. 65620, 65624 (Oct. 25, 2002).

5           If the claimant's average monthly earnings are equal to or less than the amounts

6    determined under § 416.974(b)(2), the Commissioner will generally find that the earnings do not

7    demonstrate substantial gainful activity.  20 CFR § 416.974(b)(3).  The Ninth Circuit has

8    interpreted this statutory framework to imply a burden-shifting approach at step-four of the

9    sequential analysis.  *Lewis*, 236 F.3d at 515-516.

10           "The presumption that arises from low earnings shifts the step-four burden of

11    proof from the claimant to the Commissioner.  Without the presumption, the claimant must

12    produce evidence that he or she has not engaged in substantial gainful activity; if there is no such

13    evidence, the ALJ may find that the claimant has engaged in such work.  With the presumption,

14    the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside

15    from earnings, that the claimant has engaged in substantial gainful activity.  The regulations list

16    five factors: the nature of the claimant's work, how well the claimant does the work, if the work

17    is done under special conditions, if the claimant is self-employed, and the amount of time the

18    claimant spends at work."  *Id.* (citing 20 C.F.R. §§ 404.1573 and 416.973).

19           Here, the evidence is conflicting regarding the relevant time period that plaintiff

20    worked as an automobile detailer.  Such conflict complicates the question of whether that work

21    qualifies as "past relevant work."  In a disability report dated December 10, 2003, plaintiff

22    reported that he worked at a car wash as a washer and detailer from March 2, 2002, through June

23    10, 2002, for eight hours per day, five to six days per week, earning $6.75/hour.  (Tr. at 82, 91.)

24    In another undated questionnaire, plaintiff reported that he worked as a detailer from March 2002

25    until May 2002.  (Tr. at 76.)  Plaintiff's earnings record shows that during the first two quarters

26    of 2002, his earnings totaled $2,146.51 (Tr. at 75), which plaintiff argues totals only an average

1  of $375.75 per month for that six-month period, well below the regulatory minimum of $780 for

2  2002.  It is unclear whether this reported $2,146.51, was derived solely from plaintiff's work as a

3  car detailer, and over how many months it was earned.  For example, it appears that plaintiff may

4  have also been working as an in-home care provider during this time.  (Tr. at 82, 91, 222)

5  (showing he began this work in October 2001 and continued through May of 2005).

6  Furthermore, even if that amount was earned solely from his work as a detailer, those wages were

7  earned during a two to three month period, which would average to between $715 and $1073 per

8  month.

9         Further complicating the issue is evidence that plaintiff has performed work as an

10  automobile detailer for much longer periods than suggested by the earnings record.  In a report

11  prepared by speech-language pathologist Dr. Paul T. Fogle, Ph.D. (an expert retained by

12  plaintiff's attorney to review plaintiff's medical records), Dr. Fogle recounts, among other things,

13  information regarding plaintiff's work history as reported by plaintiff.  (Tr. at 207-10.)  In

14  particular, the report, dated August 2, 2005, provides that "[d]uring most of Mr. Pratt's work

15  history he has had his own automobile detailing shop and tinted car and building windows.  He

16  currently is in the same lines of work. . . . Where ever [*sic*] he has lived and worked he has

17  always maintained an independent car detailing and window tinting business."  (Tr. at 208.)  The

18  earnings record does not reflect any earnings from such self-employment.

19         Such ambiguity regarding plaintiff's earnings as an automobile detailer makes it

20  impossible to determine whether or not the burden was on the ALJ to point to substantial

21  evidence, other than earnings, showing that plaintiff's work as a detailer qualified as substantial

22  gainful activity sufficient to constitute "past relevant work."[4]  Lewis v. Apfel, 236 F.3d 503, 515

23  (9th Cir. 2001).

24  \\\\\

25

26      [4]  Neither party disputes that the plaintiff's other work as an in-home care qualified as
substantial gainful activity.

1    What is clear from the record is that the ALJ did not engage in an analysis of
2 whether plaintiff's past work as an automobile detailer technically qualified as past relevant
3 work, i.e., whether it was "substantial gainful activity."  The ALJ apparently just assumed that it
4 did and made her determination on that basis, finding plaintiff's residual functional capacity did
5 not preclude such work.  (Tr. at 16.)

6    Although defendant is correct in its argument that earnings alone are not
7 conclusive regarding the issue of past relevant work, the court cannot determine any basis for the
8 ALJ's conclusion that the plaintiff's work as an automobile detailer qualified as such.  In fact, the
9 only explicit evidence the undersigned has found in the record on this issue is a Social Security
10 form entitled "vocational decision" completed by an unknown source, indicating that plaintiff has
11 no "past relevant work."  (Tr. at 201.)

12    The court notes that plaintiff failed to bring this issue to the ALJ's attention either
13 in her briefing, or at the hearing.  (Tr. at 132-39, 140-47, 217-32.)  It is unclear whether or not
14 plaintiff raised this issue with the Appeals Council.  (Tr. at 4-6.)  Regardless, the Supreme Court
15 plurality opinion in Sims v. Apfel, 530 U.S. 103, 104-05 (2000), holds that a Social Security
16 claimant's failure to present an issue to the Appeals Council does not waive judicial review of
17 that issue.

18    Given the lack of information and analysis regarding whether plaintiff's job as an
19 automobile detailer qualified under the regulatory definition of "past relevant work," the court
20 finds that remand is appropriate.  On remand, the record may be further developed, and the ALJ
21 should consider whether application of the framework set forth in Lewis v. Apfel is appropriate.[5]
22 Depending on the ALJ's determination at step-four, additional findings may be needed including
23 at step-five of the sequential analysis.
24 \\\\\

25

26    [5]  Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001).

1          B. Credibility Determination Supported by Substantial Evidence

2                    Plaintiff contends that the ALJ failed to properly evaluate and credit plaintiff's

3    subjective complaints regarding his speech loss.

4                    The ALJ determines whether a disability applicant is credible, and the court defers

5    to an ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

6    94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

7    credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

8    Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

9    supported by "a specific, cogent reason for the disbelief").

10                   In evaluating whether subjective complaints are credible, the ALJ should first

11   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

12   F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

13   solely because objective medical evidence does not quantify them.  Id. at 345-46.  The ALJ also

14   may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2)

15   unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

16   of treatment; and (3) daily activities.[6]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see

17   generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records,

18   physician and third party testimony about nature, severity, and effect of symptoms, and

19   inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security

20   Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own

21   observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

22   substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).

23   _____

24           [6] Daily activities which consume a substantial part of an applicants day are relevant.
     "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
25   activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
     any way detract from her credibility as to her overall disability.  One does not need to be utterly
26   incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
     (quotation and citation omitted).

1    Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant

2    testimony must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169

3    F.3d 595, 599 (9th Cir. 1999).

4              In this case, the ALJ determined that plaintiff's statements concerning his speech

5    impairment and its impact on his ability to work were "not entirely credible."  (Tr. at 15.)  The

6    ALJ based this finding on discrepancies between the plaintiff's assertions and information

7    contained in the documentary reports as well as reports from treating and examining

8    practitioners.  (Id.)  Specifically, the ALJ found that plaintiff's allegations that he "could not

9    communicate" or speak were an exaggeration of his symptoms.  (Id.)

10            Plaintiff alleges that this is a misstatement of the record.  To the contrary, there

11   are several places in the record where plaintiff alleged an inability to speak or communicate.  For

12   example, with regard to his job as an in-home care provider, he reported that he "cannot speak

13   with [his] clients anymore because of [his] loss of voice."  (Tr. at 76.)   In a form completed on

14   December 22, 2003, plaintiff wrote that he "cannot speak or communicate because of my [his]

15   speech impairment."  (Tr. at 107.)  In a form completed on May 22, 2004, plaintiff reported that

16   he "just can't speak."  (Tr. at 129.)

17            As plaintiff suggests, a more accurate description of plaintiff's speech impairment

18   was contained in the report prepared by Dr. Fogle, the speech-language pathologist retained by

19   plaintiff's attorney.  Dr. Fogle reviewed plaintiff's medical records, which showed that he had

20   been diagnosed with "episodic aphonia."[7]  (Tr. at 207.)  The ALJ, like Dr. Fogle, noted plaintiff's

21   treatment for this impairment with speech therapy, which improved his condition.  (Tr. at 14,

22   207.)  In fact, on March 16, 2004, plaintiff was discharged from the therapy program, having

23   attained "overall goal achievement of 88 percent."  (Tr. at 157.)

24   \\\\\

25

26            [7] "Dysphonia" is an impairment of the voice.  See The Merck Manual 483 (18th ed.
     2006).

9

1          Dr. Fogle examined plaintiff and reported that although his voice was "moderately

2    dysphonic with a predominance of breathiness, his speech was 90 to 95 percent intelligible

3    during the evaluation," and when asked to try to speak with more effort, his speech

4    "immediately" became 95 to 100 percent intelligible.  (Tr. at 14, 208-09.)  Dr. Fogle estimated

5    that most people would likely understand 80 to 90 percent of plaintiff's speech with reasonable

6    listening and attending.  (Tr. at 208.)  Dr. Fogle opined that plaintiff could do occasional

7    speaking throughout an eight-hour workday and could speak well enough to communicate with

8    employers and co-workers.  (Tr. at 209-10.)

9          The ALJ's finding that plaintiff's ability to work is eroded because he can "speak

10   only occasionally" (Tr. at 16) reflects Dr. Fogle's assessment and is line with other medical

11   evidence in the record.  As discussed above and by the ALJ, plaintiff underwent speech therapy

12   with largely successful results.  Furthermore, record evidence showed that plaintiff "was not

13   limited to short, simple productions" as indicated by his extended conversation with Dr. Fogle

14   during the August 2, 2005, interview and evaluation.  (Tr. at 15, 210.)  Plaintiff also testified at

15   the hearing without apparent incident (Tr. at 219-31), and continued working as an in-home care

16   provider through May 2005, well after his alleged onset date.  (Tr. at 221-22.)

17         All of this evidence supports the ALJ's finding that plaintiff's allegations

18   regarding the severity of the limitations caused by his speech impairment were less than credible.

19   The ALJ's citation to this evidence in finding plaintiff's allegations to be exaggerated constituted

20   clear and convincing reasons supporting her determination.  Accordingly, the ALJ did not err in

21   assessing plaintiff's credibility.

22         C. Hypothetical Posed to the Vocational Expert

23         Plaintiff asserts that the hypothetical posed to the vocational expert did not

24   comprehensively describe plaintiff's limitations.

25         Hypothetical questions posed to a vocational expert must include all the

26   substantial, supported physical and mental functional limitations of the particular claimant.

10

1   Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d

2   789, 793 (9th Cir.1997).  If a hypothetical does not reflect all the functional limitations, the

3   expert's testimony as to available jobs in the national economy has no evidentiary value.

4   DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991); but see Thomas v. Barnhart, 278 F.3d

5   947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE

6   had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all

7   limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by

8   other reliable evidence).  While the ALJ may pose to the expert a range of hypothetical questions,

9   based on alternate interpretations of the evidence, substantial evidence must support the

10  hypothetical which ultimately serves as the basis for the ALJ's determination.  Embrey v. Bowen,

11  849 F.2d 418, 422 (9th Cir. 1988).[8]

12          The hypothetical posed to the expert at the hearing, upon which the ALJ based her

13  decision, was that plaintiff would have environmental limitations of "limited speaking, can speak

14  on an occasional basis only, which is very little to 1/3 of the day, non-continuous."  (Tr. at 231.)

15  Based on this hypothetical, the expert opined that plaintiff could perform his past relevant work

16  as an automobile detailer.  (Id.)

17          Plaintiff argues that this hypothetical failed to account for other limitations

18  assessed by Dr. Fogle, specifically, that plaintiff should work in a quiet environment, and that the

19  fluctuation in plaintiff's condition (i.e., "good days" and "bad days") should be considered.

20  Plaintiff attaches as an exhibit the occupational description of automobile detailer set forth in the

21  Dictionary of Occupational Titles, which provides that the noise level for this job is "loud."  See

22  Exhibit A to Plaintiff's Motion for Summary Judgment (The United States Dept. of Labor,

23  Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991),  915.687-034

24

25          [8]  Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a
    hypothetical question propounded by a claimant's counsel."  Magallanes v. Bowen, 881 F.2d
    747, 756 (9th Cir. 1989).  The ALJ is free to accept them if they are supported by substantial

26  evidence or reject them if they are not.  Id., at 756-57.

1   Automobile Detailer)).

2          Contrary to plaintiff's assertions, Dr. Fogle did not find that plaintiff was limited

3   to working in quiet environments.  Rather, he commented that his evaluation was "based on

4   performance in a quiet conference room setting . . . . and that [s]ettings with increased noise

5   could reasonably be expected to result in some degree of reduced effectiveness of his speech."

6   (Tr. at 209.)   Dr. Fogle further stated that plaintiff is "able to communicate effectively in a quiet

7   conversational setting."  (Id.)  These comments, however, do not constitute explicit limitations.

8   Rather, Dr. Fogle opined that plaintff could do "occasional speaking throughout an eight-hour

9   work day; that is, speak effectively for 2-2 ½ [hours] throughout the day."  (Id.)  He further

10  commented that plaintiff would have "some degree of limitations with his voice and speech if he

11  chose to pursue work that required frequent to extensive speaking."  (Id.)

12         Plaintiff also asserts that the ALJ failed to include in the hypothetical the

13  fluctuation in plaintiff's condition (i.e., "good days" and "bad days") described by Dr. Fogle.  Dr.

14  Fogle did indeed opine that "the fact that Mr. Pratt reported that he has 'good days' and 'bad

15  days' needs to be considered.  It is reasonable to expect that a person with his diagnosis and

16  symptoms would have some degree of reduced speech functioning on bad days.  He may have

17  some intermittent difficulty with his voice and speech, and during those times he would need to

18  make some adjustments in his communication."  (Tr. at 209.)

19         The court notes that the Dictionary of Occupational Titles provides that the

20  physical demands of  "talking" and "hearing" are not present in the automobile detailer job.  See

21  Dictionary of Occupational Titles (4th ed. 1991),  915.687-034 Automobile Detailer (emphasis

22  added).  Based on this description, the court would be assured of the completeness of the

23  hypothetical posed to the vocational expert, given the ALJ's finding that plaintiff could perform

24  his past relevant work as an automobile detailer.

25         However, as discussed above, further findings must be made regarding whether

26  plaintiff's job as an automobile detailer qualifies as past relevant work.  If on remand the ALJ

1    determines otherwise, she may proceed to step five of the sequential evaluation, which requires

2    the Commissioner to produce evidence that there are jobs in the national economy that plaintiff

3    can perform.  That determination often requires the testimony of a vocational expert.  Any

4    hypothetical posed to the expert should include the limitation of plaintiff having intermittent

5    "bad days" in his ability to speak.

6    CONCLUSION

7              Accordingly, plaintiff's Motion for Summary Judgment or Remand is granted in

8    part, the Commissioner's Cross Motion for Summary Judgment is denied in part, and the Clerk is

9    directed to enter judgment for the plaintiff.   This case is remanded for further findings pursuant

10   to sentence four of 42 U.S.C. § 405(g).

11   DATED: 7/25/07                                    /s/ Gregory G. Hollows

12                                                     _____
                                                       GREGORY G. HOLLOWS
                                                       U.S. MAGISTRATE JUDGE

13   GGH:mb
     Pratt.1369.ss..wpd

14

15

16

17

18

19

20

21

22

23

24

25

26